UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br>vs.<br><br>HAROLD RED OWL,<br><br>                  Defendant. | 5:16-CR-50163-03-JLV<br><br>ORDER GRANTING MOTION FOR DISCLOSURE OF GRAND JURY TESTIMONY |

**INTRODUCTION**

On November 21, 2016, Mr. Red Owl was originally charged by complaint for Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. § 113(a)(6). (Doc. 1). Subsequently, on December 6, 2016, Mr. Red Owl was charged in an indictment with Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. §§ 1153, 2, 113(a)(6), and 3559(f) and Felony Child Abuse and Neglect in violation of 18 U.S.C. §§ 1153 and 2 and SDCL § 26-10-1. (Doc. 23). There exists no federal offense for child abuse, therefore, Mr. Red Owl was charged under South Dakota Codified Law which states that "[a]ny person who abuses, exposes, tortures, torments, or cruelly punishes a minor in a manner which does not constitute aggravated assault, is guilty of a Class 4 felony. If the victim is less than seven years of age, the person is guilty of a Class 3 felony." SDCL § 26-10-1.

On August 13, 2019, Mr. Red Owl filed a Motion for Disclosure of Grand Jury Transcript. (Doc. 361). The pending Motion was referred to the

1

Magistrate Judge by Chief Judge Jeffrey L. Viken on August 13, 2019. (Doc. 363).

## BACKGROUND

Mr. Red Owl seeks production of the grand jury transcripts of FBI Special Agent ("SA") Mark Lucas in order to determine whether grounds may exist to dismiss the indictment. (Doc. 362). He argues that alleged discrepancies exist between SA Lucas' affidavit and written 302 report of his interview with Mr. Red Owl. Id. at p. 3. He further argues there exist "substantial and significant discrepancies between the audio recording of the interview and SA Lucas' 302 report and his affidavits." Id. Mr. Red Owl cites to SA Lucas' "pattern of making inconsistent statements" and his concern that "based upon these discrepancies, it is reasonable and logical to conclude that SA Lucas' grand jury testimony may have been entirely at odds with Harold Red Owl's actual statements." Id. at p. 6-7.

## DISCUSSION

I. **Disclosure of Grand Jury Transcripts**

    a. **Legal Standard for Disclosure of Grand Jury Transcripts**

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows for disclosure of grand jury transcripts by the court "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Grand jury transcripts are "generally not discoverable on pretrial motion." United States v. Pelton, 578 F.2d 701, 709 (8th Cir. 1978). A defendant must make a showing of "particularized need" for

2

the transcripts. <u>United States v. Broyles</u>, 37 F.3d 1314, 1318 (8th Cir. 1994). Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. <u>Douglas Oil Co. of Cal. v. Petrol Stops Nw.</u>, 441 U.S. 211, 222 (1979) (citing <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 683 (1958).

This particularized need is demonstrated "by the presentation of 'specific evidence of prosecutorial overreaching.'" <u>United States v. Finn</u>, 919 F.Supp. 1305, 1327 (D.Minn. 1995) (quoting <u>United States v. Lame</u>, 716 F.2d 515, 518 (1983)). In analyzing whether reversable prosecutorial misconduct exists, the Eighth Circuit Court of Appeals employs a two-part test: "(1) whether the prosecutor's conduct was improper, and (2) whether such conduct prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." <u>United States v. Anwar</u>, 428 F.3d 1102, 1111–12 (8th Cir. 2005) (citing <u>United States v. Conrad</u>, 320 F.3d 851, 855 (8th Cir. 2003)). To meet the burden of a particularized need,

> [a] criminal defendant must point to specific evidence of prosecutorial overreaching in order to show particularized need to consult grand jury transcripts. A defendant who "has not pointed to anything in the record which might suggest that the prosecution engaged in improper conduct before the grand jury" has not carried his burden of persuasion.

<u>Lame</u>, 716 F.2d at 518–19 (quoting <u>United States v. Edelson</u>, 581 F.2d 1290, 1291 (7th Cir.1978)).

### b. Showing of a Particularized Need

Mr. Red Owl has made a showing of a particularized need of SA Lucas' grand jury testimony and presentation of specific evidence of prosecutorial overreaching through inconsistencies in SA Lucas' affidavit and 302 along with SA Lucas' prior untruthful grand jury testimony. (Doc. 362).

#### i. Inconsistencies in SA Lucas' Affidavit and 302

Mr. Red Owl alleges three distinct inconsistencies which were portrayed as stated by Mr. Red Owl in SA Lucas' affidavit which Mr. Red Owl claims he did not admit in his interview: (1) that I.W.C. and J.W.C. were not his "responsibility,"; (2) "that when people would come over to the residence, a clothesline was strung up and a sheet placed over it to hide the children,"; and (3) "that the victims would 'steal' food which was why they hid all the food in their room." Id. at p. 2 (quoting (Doc. 6)). Mr. Red Owl claims the first two statements were never made and the third was taken out of context, referring to the children of Darshan Featherman who would "raid the fridge without asking" and would "eat or drink items, such as milk, intended for J.W.C." (Doc. 362 at p. 3-4). Mr. Red Owl claims the interview unmistakably refers to hiding food from Darshan Featherman's older children who did not live at the home and was not referring to hiding food from the two victims. Id.

The government does not address these inconsistencies. (Doc. 365). Rather, the government responds that "[d]espite any alleged minor inaccuracies in the affidavit and 302 by SA Lucas, the facts and circumstances of this case as explained by the defendants support the charges." Id. at p. 8. Mr. Red

Owl's purported admission of the above three statements are not "minor inaccuracies" as the government would classify them. Id. Rather, these facts were crucial to linking Mr. Red Owl's involvement in the criminal activity noted in the Amended Complaint. See (Doc. 6 at p. 7)

> [Harold Red Owl] admitted he saw the kids and they did not look healthy, but added that they were not his "responsibility." He stated when people would come over to the residence, a clothesline was strung up and a sheet placed over it, to hide the children. He said the victims would "steal" food which was why they all hid food in their rooms.

Id. The Government proports that SA Lucas "inferred" Mr. Red Owl's comments to include hiding food from the victims and "infer[red]" Mr. Red Owl saw the clothesline with a sheet draped over it because of its proximity to the toddler bed. (Doc. 365 at p. 7-8). The "minor inaccuracies" and "inferences" SA Lucas drew were a clear distortion of Mr. Red Owl's statements. In fact, it was SA Lucas who stated, "Roberta's responsible for these kids, right?" (Doc. 365, Ex. 2 at 14:05-14:20). Mr. Red Owl agreed, stating that the kids had been dropped off by Roberta Featherman's daughter, but never stated the kids were not *his* responsibility. Id. Mr. Red Owl never once mentioned a sheet strung up, let alone a sheet being used to hide the children. Finally, Mr. Red Owl's comments regarding children stealing food were clearly referring to Darshan Featherman's children, not to the two victims.[1] Id. at 9:00-9:30, 11:00-12:20. Here, the Government's own exhibit confirms that Mr. Red Owl did not admit

---

[1] After Mr. Red Owl's comment regarding hiding food in his room because Darshan Featherman's children would eat all the food in the house, SA Lucas is heard clarifying that the "kids" Mr. Red Owl was referring to did not involve the two victims, "But *these kids* weren't doing that, right? Because they couldn't move around much." (Doc. 365, Ex. 2 at 12:14-12:20).

5

the above statements during his interview with SA Lucas. (Doc. 365, Ex. 2). Therefore, the major discrepancies between the statements made by Mr. Red Owl during his interview and those represented by SA Lucas in his 302 and affidavit provide adequate grounds for the disclosure of SA Lucas' grand jury transcript.

### ii. SA Lucas' Prior Untruthful Grand Jury Testimony

This is not the first allegation of SA Lucas providing inaccurate testimony before a grand jury. This court previously held that grand jury testimony provided by SA Lucas in an alleged rape indictment was "at worst a lie and at best extremely misleading." United States v. Gregg, 17-cr-50044-JLV (Doc. 120 at p. 16). This court further determined that SA Lucas' testimony in response to attorney questioning in Gregg was "misleading at worse and unresponsive at best." Id. at p. 17. The court was unable to find any precedent regarding whether the prior false or misleading testimony of an FBI Special Agent creates a unique circumstance providing for the disclosure of grand jury transcripts involving the same agent in a subsequent, unrelated case.

However, "[a] court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." Douglas Oil Co. of Cal., 441 U.S. at 223. Here, the court is mindful of the prior findings regarding SA Lucas' inaccurate testimony, and finds that, combined with the inconsistencies alleged in the present case between his affidavit and 302, provides a compelling necessity permitting the

6

particularized need of SA Lucas' grand jury transcript. As such, the Motion for Disclosure of SA Lucas' Grand Jury Testimony is granted.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Harold Red Owl's Motion for Disclosure of Grand Jury Testimony (Doc. 361) is granted.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CRIM. P. 58 (g)(2), 59(a). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. FED. R. CRIM. P. 59(a). Objections must be timely and specific in order to require review by the district court.

DATED this 18th day of September, 2019.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge